UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FRIEDMAN'S, INC.,                    ]
                                     ]
    Plaintiff,                       ]
                                     ]
v.                                   ]    No. 3:10-00497
                                     ]    JUDGE HAYNES
                                     ]
HARRY L. McCABE,                     ]
                                     ]
    Defendant.                       ]

**MEMORANDUM**

Plaintiff, Friedman's Inc., filed this action under the Gun Control Act ("GCA"), 18 U.S.C. § 923(f)(3), against the Defendant, Harry L. McCabe, III ("Director"), as the Director of Industry Operations, Nashville Field Division, Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"). Plaintiff asserts that the Director lacked sufficient evidence to revoke Plaintiff's federal firearm license ("FFL") for allegedly willfully violating provisions of the GCA.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 8), contending, in sum, that the facts of Plaintiff's violations under the GCA are undisputed and the evidence in the record also establishes Plaintiff's willfulness. In its response and cross-motion for summary judgment (Docket Entry No. 15), Plaintiff contends, in essence, that the evidence is insufficient to establish any willful violation of the GCA because the evidence reveals that the violations were caused by negligent mistakes.

For the reasons set forth below, the Court concludes that Defendant's motion for summary judgment should be granted and Plaintiff's motion for summary judgment should be denied.

# I. FINDINGS OF FACT[1]

Plaintiff, Friedman's, Inc., d/b/a Friedman's Army Surplus, holds a license issued under the Gun Control Act of 1968, as amended, 18 U.S.C., Chapter 44, as a dealer, including pawnbroker, in firearms other than destructive devices, license number 1-62-037-01-1G-10438. (Docket Entry No. 13, Administrative Record, Government Exhibit 1). In addition to the Army/Navy surplus items, Plaintiff sells hunting and fishing equipment, certain types of clothing, and firearms. Id., Attachment B, Transcript at p. 110. Plaintiff has held a valid FFL since 1968. Id. at p. 118. Frank Friedman, the president of the company, has been running the day-to-day operations of the store since 1990. Id. at p. 119.

ATF administers and enforces the GCA. Id., at pp. 11-12. In June 2000, ATF Inspector Malcolm Lockridge conducted a compliance inspection at Plaintiff's premises and cited Plaintiff with the following violations: (1) failure to obtain two properly executed ATF Forms 4473 in violation of then-27 C.F.R. § 178.124(c)(1);[2] (2) failure to note the date and response received from the National Instant Criminal Background Check System ("NICS"),[3] in violation of then-27 C.F.R.

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

[2] Title 27, Code of Federal Regulations, Part 178 was recodified and now contained within 27 C.F.R. Part 478. See 68 Fed. Reg. 3744 (2003).

[3] Known in Tennessee as the Tennessee Bureau of Investigation Instant Check System or "TICS."

§ 178.124(c)(3)(iii);[4] and (3) failure to record timely the purchase or other acquisition of a firearm in the Acquisition and Disposition Record ("A&D Record") in violation of then-27 C.F.R. § 178.125(e). Id., Attachment A, Exhibit 6. Inspector Lockridge discussed with James Wade, Plaintiff's manager, the violations, the legal citations for the requirements and the necessary corrective actions. Id., Exhibits 6 and 7; attachment B, Transcript at p. 16. On June, 23, 2000, Inspector James G. Tyler sent a warning letter to Wade, detailing the violations found during the 2000 compliance inspection, stating: "You are reminded that your Federal firearms license is conditioned upon your compliance with Federal laws and regulations. Repeat violations of those listed above will be viewed as willful, and may result in the revocation of your license." Id., Exhibit 8.

In August 2002, ATF cited Plaintiff for failing to obtain four properly executed ATF Forms 4473, in violation of then-27 C.F.R. 178.124 and failure to maintain accurate A&D Records (three entries), in violation of then-27 C.F.R. 178.125(e). Id., Exhibit 10. Inspector Kathy Irwin discussed with Wade the violations, the legal citations for the requirements and the necessary corrective actions. Id., Exhibits 10 and 11.

In October 2003, ATF cited Plaintiff for failing to obtain three properly executed ATF Forms 4473, in violation of 27 C.F.R. § 478.124 and failing to maintain accurate A&D Records, in violation of 27 C.F.R. § 478.125(e). Id., Exhibit 12. ATF Inspector Stephen Weiss discussed with Wade the violations, the legal citations for the requirements and the necessary corrective actions. Id., Exhibits 12 and 13. On January 12, 2004, Wade attended an ATF warning conference where the 2003 violations were discussed. On January 20, 2004, ATF sent a letter to Plaintiff stating: "You are

---

[4]Section 178.124(c)(3)(iii) is now codified at 27 C.F.R. § 478.124(c)(3)(iv).

reminded that your Federal Firearms License is conditioned upon your compliance with Federal firearms laws and regulations. Repeat violations of those listed above will be viewed as willful, and my result in the revocation of your license." Id., Exhibit 14.

In October 2005, Plaintiff was cited with, among other things, failure to obtain properly executed ATF Forms 4473, in violation of 27 C.F.R. § 478.124(c) and the transfer of a firearm to a person knowing or having reasonable cause to believe that such person is prohibited from possessing firearms. Id., Exhibit 15. Plaintiff's President, Frank Friedman, was advised by ATF Investigator Irwin of these violations, the legal citations for the requirements, and the necessary corrective actions. Id., Exhibits 15 and 16. As a result of the 2005 inspection, ATF issued a Notice of Revocation of License to Plaintiff on May 2, 2007. Id., Exhibit 32. On November 29, 2007, a revocation hearing was conducted. Following the hearing, Defendant opted to conduct a warning conference with Plaintiff to discuss the issues relating to Plaintiff's violations and allow Plaintiff to discuss any corrective actions taken to remedy the cited violations and its plan of action to prevent or eliminate future errors. Id., Exhibit 18.

At the September 22, 2008, warning conference, Friedman stated that, as to the violation for failing to execute properly ATF Forms 4473, he implemented a new policy that required a second review of each Form 4473 prior to the customer leaving the premises. Id., Exhibit 19. As to the violation for a prohibited sale of a firearm to any person known or having reasonable cause to believe that such person is prohibited from possessing firearms, all personnel were required to stop the sale and read the question to the customer, and explain the instructions to the customer. Id. After the 2008 Warning Conference, Friedman received a letter dated September 22, 2008, that stated: "The violations for which you were cited could adversely impact law enforcement's ability to reduce

4

violent crime and protect the public. You are reminded that future violations, repeat or otherwise, could be viewed as willful and may result in revocation of your license. You may anticipate further inspections to ensure your compliance." Id. The letter also made reference to Plaintiff's new policies to prevent such violations from happening again. Id.

In February and March 2009, ATF Investigator Erik Longnecker inspected Plaintiff's premises, reviewing records dating back to 2005, and cited Plaintiff with eight violations, after Plaintiff's 2005 inspection. Id., Exhibits 20, 23-24, 26-29. As a result, on July 30, 2009, Plaintiff received a revocation notice, informing Plaintiff that its FFL was being revoked because Plaintiff willfully transferred a firearm on approximately three occasions to a person with reasonable cause to believe such person was prohibited from possessing firearms, in violation of 18 U.S.C. §§ 922(d)(1)-(2), (5) and 27 C.F.R. §§ 478.99(c)(1)-(2), (5);[5] failed to record timely and accurately the purchase or acquisition of firearms in the A&D Record on approximately fifty occasions, in violation of 18 U.S.C. § 923(g)(1)(A)[6] and 27 C.F.R. § 478.125(e);[7] failed to record timely and accurately the

---

[5] 18 U.S.C. § 922(d)(1)-(2), (5) and 27 C.F.R. § 478.99 (c)(1)-(2), (5) provide, in pertinent part, that it shall be unlawful for a licensed dealer to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; (2) is a fugitive from justice; (5) is an alien illegally or unlawfully in the United States.

[6] 18 U.S.C. § 923(g)(1)(A) provides in pertinent part, that each "licensed dealer shall maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe."

[7] 27 C.F.R. § 478.125(e) provides, in pertinent part, that "each licensed dealer shall enter into a record each receipt and disposition of firearms . . . The purchase or other acquisition of a firearm shall . . . be recorded not later than the close of the next business day following the date of such purchase or acquisition...The record shall show the date of receipt ,the name and address or the name and license number of the person from whom received, the name of the manufacturer and

sale or other disposition of firearms in the A&D Record on approximately 17 occasions, in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e);[8] failed to record timely NICS (TICS) information on Firearms Transactions Records, ATF Forms 4473 on approximately two occasions, in violation of 18 U.S.C. § 923(g)(1)(A), 27 C.F.R. § 478.21(a), and 27 C.F.R. § 124(c)(3)(iv);[9] failed to obtain properly completed ATF Forms 4473 on approximately two occasions, in violation of 18 U.S.C. 923(g)(1)(A), 27 C.F.R. § 478.21(a), and 478.124(c)(1);[10] and failed on at least 12 occasions to record identification document information on ATF Forms 4473, in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(3)(i).[11] Id., Exhibit 2.

---

importer (if any), the mode, serial number, type, and the caliber or gauge of the firearm."

[8] 27 C.F.R. § 478.125(e) provides, in pertinent part, that "each licensed dealer shall enter into a record each receipt and disposition of firearms . . . The sale or other disposition of a firearm shall be recorded by the licensed dealer not more than 7 days following the date of such transaction … The record shall show the date of the sale or other disposition of each firearm, the name and address of the person to whom the firearm is transferred...."

[9] 27 C.F.R. § 478.124(c)(3)(iv) requires, in pertinent part, that "After the transferee has executed the Form 4473, the licensee . . . [s]hall comply with the requirements of section 478.102 and record on the form the date on which the licensee contacted the NICS, as well as any response provided by the system, including any identification number provided by the system."

[10] 27 C.F.R. § 478.124(c)(1) requires, in pertinent part, that "[p]rior to making an over-the-counter transfer of a firearm to a non-licensee . . . the licensed dealer so transferring the firearm shall obtain a Form 4473 from the transferee showing the transferee's name, sex, residence address (including county or similar political subdivision), date and place of birth; height, weight and race of the transferee; the transferee's country of citizenship; the transferee's INS-issued alien number or admission number; the transferee's State of residence; and certification by the transferee that the transferee is not prohibited by the Act from transporting or shipping a firearm in interstate or foreign commerce or receiving a firearm which has been shipped or transported in interstate or foreign commerce or possessing a firearm in or affecting commerce."

[11] 27 C.F.R. § 478.124(c)(3)(i) provides, in pertinent part, that after the transferee has executed ATF Form 4473, Firearm Transaction Record, the licensee shall verify the identity of the transferee by examining the identification document (as defined in § 478.11) presented and shall note on the Form 4473 the type of identification used. Section 478.11 defines the term "identification

6

On December 15, 2009, an administrative hearing was held on the revocation of Plaintiff's firearms license, pursuant to 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74. Id., Exhibit 3. At the hearing, Friedman admitted to the violations cited in the revocation notice, but testified:

> [A] lot of these are just, in my opinion, I am not trying to lessen their impact but a lot of them are just are employees getting in a hurry, nobody, nobody is around . . . [W]e do not have a large sales staff. . . . to check it out, you know, look it over. . . . I think a lot of these errors are just . . . sales people just going too fast. . . . when I am aware of these, I say, guys, you got to slow down. Everything is important. Everything matters. It must be done correctly. It is one of those things that is kind of hard to put into procedure . . .unless you want to go out and hire somebody or two people or three people to, you know, where this guy looks at this one, this guy looks at that one, that one the gun actually sold . . . . [T]here is somebody in the office to look over stuff. We just cannot afford all that. We are a small company. We are just trying to run our business. . . . there really are not a lot of systems one can put in place with employees moving too fast and not paying attention where they should other than going back and saying you are going too fast, you are not paying attention, you need to slow down and do this right.

Id., Attachment B, Transcript at pp. 125-26. Friedman also testified he knew he was responsible for the acts and omissions of his employees. Id., at p. 47.

Based on the evidence at the hearing, on January 12, 2010, Hearing Officer Charles W. Yoakum recommended that Plaintiff's firearms license be revoked. Id., Attachment C. On March 26, 2010, Defendant issued a revocation notice of Plaintiff's firearms license, concluding that Plaintiff's (1) transfer of firearms to persons while having reasonable cause to believe such persons were prohibited from possessing firearms on three occasions; (2) failure to record timely and

---

document" to mean "a document containing the name, residence address, date of birth, and photograph of the holder and which was made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals."

7

correctly the purchase or other acquisition of 29[12] firearms in the A&D Record; (3) failure to record timely the sale or other disposition of 17 firearms in the A&D Record; (4) failure to record properly NICS (TICS) information on two occasions; (5) failure to properly obtain completed ATF Forms 4473 on two occasions; and (6) failure to record identification document information on ATF Forms 4473 on 12 occasions, each constitute a willful violation of the GCA and the regulations promulgated thereunder. Id., Attachment D.

## II. CONCLUSIONS OF LAW

The GCA provides, in relevant part, that "[t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter . . . ." 18 U.S.C. § 923(e). If, after a hearing, the Attorney General revokes a firearms license for a willful violation of the GCA, the licensee may petition a United States District Court to conduct a de novo review of the Attorney General's decision. 18 U.S.C. § 923(f)(3).

> [T]he court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing . . . . If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

Id.

The Director's decision is not entitled to a presumption of correctness. Shaffer v. Holder, No. 1:09-0030, 2010 WL 1408829, at *5 (M.D. Tenn. March 30, 2010). A district court's "review

---

[12]During the administrative hearing, ATF's counsel requested that 21 of the 50 instances of acquisition violations, (those involving manufacturer and/or importer information) not be considered.

may be confined to the administrative record or may be supplemented by the admission of additional evidence. In either event, although the trial court need not accord any particular weight to the Secretary's findings and decision, it may, in the exercise of its discretion, accord them such weight as it believes they deserve." Stein's, Inc. v. Blumenthal, 649 F.2d 463, 467 (7th Cir. 1980). Further, in its discretion and in due consideration of judicial economy, the district court may decide the petition for review without an evidentiary hearing or a trial. Id. at 466; Perri v. Department of Treasury, 637 F.2d 1332, 1335 (9th Cir. 1981).

Plaintiff argues that its various violations do not demonstrate willfulness, but rather stem from negligent mistakes. Plaintiff argues that the Court should consider the seriousness of the violation, the specific reasons for the violation and the number of violations over time in determining whether to affirm the revocation of its FFL. Defendant argues that Plaintiff does not dispute the commission of the violations cited in the revocation notice and that Plaintiff's repeated violations establish willfulness. See (Docket Entry No. 13, Administrative Record, Government Exhibit 2).

"[W]here a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA." Appalachian Resources Development Corp. v. McCabe, 387 F.3d 461, 464 (6th Cir. 2004). That is, "a dealer violates the [GCA] when, with knowledge of what the law requires, it intentionally or knowingly violates the GCA's requirements or acts with plain indifference to them (i.e. recklessly violates them)." Armalite, Inc. v. Lambert, 544 F.3d 644, 648 (6th Cir. 2008). A "bad purpose or evil motive" is not required under the GCA. Appalachian Resources, 387 F.3d at 464. "Furthermore, it has been recognized that a single violation of the GCA is a sufficient basis for denying an application or revoking a firearms dealer's license." Id. "To

9

preclude the grant of summary judgment, [Plaintiff] must establish that genuine issues of material fact exist as to each of the ATF's charged violations." Armalite, 544 F.3d at 649.

Plaintiff does not dispute that the cited violations occurred. Instead, Plaintiff argues that most of the violations committed were not serious and were "minor bookkeeping errors," while admitting a few serious violations, such as selling a firearm with contradictory information on the Form 4473 and losing one firearm. (Docket Entry No. 15, Response at 15). The fact remains that these violations occurred after repeated warnings and involved extensive and serious violations. The record reveals that after being cited for failure to obtain properly completed ATF Forms 4473 following the 2000, 2002, 2003, and 2005 inspections; being warned that repeated violations could lead to the revocation of its license; and pledging to implement new policies to prevent such errors from recurring, the 2009 inspection revealed that Plaintiff failed to obtain properly completed ATF Forms 4473 on two occasions.

After being cited in 2000 for failure to record NICS (TICS) information, and being warned that repeated violations could lead to the revocation of its license, Plaintiff was cited for A&D Record violations concerning acquisition of firearms in 2002 and 2003 and was warned that repeated violations could lead to the revocation of its license. In 2005, Plaintiff was cited for transferring a firearm to a person while having reasonable cause to believe that person was prohibited from possessing firearms; was warned that repeated violations could lead to the revocation of its license; and pledged to implement new policies to prevent such errors from recurring. The 2009 compliance inspection revealed that Plaintiff transferred firearms to persons while having reasonable cause to believe those persons were prohibited from possessing firearms on three occasions and on fifty occasions failed to record timely and accurately the purchase and acquisition of firearms.

Moreover, the 2009 inspection revealed that Plaintiff failed on 17 occasions to record the disposition of firearms in its A&D Records, including one firearm that could not be accounted for, constituting the third time that Plaintiff had been cited for such violations, with prior violations in 2002 and 2003. The 2009 inspection revealed that Plaintiff failed on two occasions to record required NICS (TICS) information. Finally, the 2009 inspection revealed that Plaintiff failed on 12 occasions to record identification information on ATF Forms 4473, a repeat violation that Plaintiff was cited for after the 2005 inspection.

The record reveals that despite several warnings Plaintiff, a well experienced gun retailer since 1968, has a history of repetitive and serious violations. In Armalite the Sixth Circuit found the plaintiff acted with plain indifference to legal requirements by "its consistent failure to ensure full and accurate completion of 4473 forms," stating, "[a]lthough it knew that its employees were not fully and accurately completing the forms, Armalite chose not to take steps to ensure future compliance. At some point, repeated negligence becomes recklessness." Armalite, 544 F.3d at 649-50. The Court concluded that the failure to include the information required on the 4473 forms on the six occasions was not a mere "processing error" but a reckless disregard for known legal obligations. Id. at 650; see also Shaffer, 2010 WL 1408829, at *14 ("The record reveals Shaffer's pervasive history and tolerance for mistakes. 'A simple mistake does not on its own constitute willfulness.... But at some point, a series of purported mistakes may evince a tolerance for errors and thus a plain indifference to the applicable statutory and regulatory requirements.'") (citation omitted); Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 348 F. Supp.2d 1299, 1306 (S.D. Ala. 2004) ("[T]he gravity of the policy objectives of the Gun Control Act . . . strongly militates in favor of allowing the ATF to insist on total compliance as a condition of

retaining the privilege of dealing in firearms. . . . . If ever there were a statutory scheme where a licensee should be obligated to 'sweat the details,' irrespective of how trifling they may appear, the Gun Control Act would appear to fit that bill.") (citations omitted).

Based upon the record, the Court concludes that Plaintiff "willfully" violated the GCA by intentionally, knowingly or recklessly violating known legal obligations. Plaintiff, as a well-experienced gun licensee since 1968 understood the requirements of the gun laws, but knowingly failed to follow them or was indifferent towards them. Plaintiff was cited for violations in 2000, 2002, 2003, and 2005; was warned that repeated violations could lead to the revocation of its license; received a revocation notice, participated in a warning conference in 2008 and pledged to implement new policies to prevent such errors from recurring. Yet in 2009, the ATF found a total of 86 violations of the GCA. Friedman testified, in essence, that many of the violations were due to "minor bookkeeping errors." Yet, on this record, such errors constitute "to reckless violations of known legal obligations or what comes to the same thing: a plain indifference to known legal obligations." Armalite, 544 F.3d at 649.

After de novo review of the evidence in the administrative record, the Court concludes that Plaintiff's violations were willful and that the Attorney General was authorized to revoke Plaintiff's federal firearms license.

Accordingly, the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 8) should be granted and Plaintiff's motion for summary judgment (Docket Entry No. 15) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the _18_ day of November, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge